## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

NATIONAL FIRE INSURANCE )
COMPANY OF HARTFORD, )
  )
     Plaintiff, )
  )
vs. )   Case No. CIV-07-545-F
  )
NWM-OKLAHOMA, LLC, INC., )
  )
     Defendant. )

### ORDER

Before the court is Plaintiff National Fire Insurance Company of Hartford's Motion for Summary Judgment (doc. no. 25). Defendant has responded, plaintiff has replied, and the motion is ready for determination.

Background

Plaintiff, National Fire Insurance Company of Hartford (herein sometimes **NFIC**), requests the court to enter summary judgment in its favor declaring that it has no duty to defend or indemnify defendant, NWM-Oklahoma, LLC, Inc., a weight loss management company, with respect to a lawsuit currently pending before the court and entitled Sylvia Smith, et al. v. NWM-Oklahoma, LLC, Inc. d/b/a LA Weight Loss Centers, CIV-07-328-F ("the underlying action"). Defendant counters that summary judgment is not appropriate because the record demonstrates that there are genuine issues of material fact and/or NFIC is not entitled to judgment as a matter of law.

On March 16, 2007, plaintiffs, Sylvia Smith ("Smith"), Darlene Loftiss ("Loftiss"), Brenda Hammers ("Hammers") and Debbie Porter ("Porter"), filed the

underlying action.  At the time of the events alleged, plaintiffs Smith and Loftiss were customers of defendant.  Plaintiffs Hammers and Porter were employees of defendant.

According to the complaint, Susanna Reed ("Reed"), a supervisory employee of defendant, informed plaintiff Hammers that she intended to "listen in" on conversations between plaintiff Hammers and customers for training purposes.  *See*, Complaint, CIV-07-328-F, ¶ 9.  Plaintiff Hammers informed Reed that she did not have her permission to "listen in" on private and highly confidential conversations and the same was a violation of the law.  *Id*., ¶ 10.  Plaintiffs the underlying action also allege that defendant neither requested nor received plaintiffs' permission to "listen in" on plaintiffs' private conversations.  *Id*., ¶ 15.  Plaintiffs allege that subsequently Reed and other employees of defendant, through a listening device[1] placed in a private room, secretly listened to plaintiffs' confidential and highly personal conversations.  *Id., ¶* 11*,* ¶ 16.  All plaintiffs allege a claim against defendant under federal law for violation of 18 U.S.C. § 2510, *et seq*.  They also allege claims under Oklahoma law for invasion of privacy and intentional infliction of emotional distress.

In the complaint, plaintiff Porter also alleges a claim under Oklahoma law for wrongful discharge.  In that claim, plaintiff Porter alleges that she was terminated by defendant in retaliation for her refusal to lie as to certain facts and circumstances relating to defendant listening in on plaintiffs' private conversations.  Complaint, CIV-07-328-F, ¶¶ 36-37.

At the time of the alleged events, defendant was insured under a liability insurance policy, providing both primary and umbrella coverage, issued by NFIC.

---

[1] In the Joint Status Report and Discovery Plan filed in the underlying action, plaintiffs assert that the listening device was a "baby monitor."

Defendant requested defense and indemnification of the underlying action.  NFIC declined defendant's request on the grounds that the insurance it provided covered defendant only for  "bodily injury," "property damage," and "personal and advertising injury," and the claims of plaintiffs in the underlying action did not fall within the definitions of those terms.  In the alternative, NFIC declined defendant's request on the grounds that coverage was specifically excluded under the policy.  *See*, Complaint, CIV-07-545-F, ¶¶ 3, 6, 7, 8-13.  Thereafter, on May 9, 2007, NFIC commenced this declaratory judgment action against defendant, seeking a declaration from the court that it had no duty to defend or indemnify.  *Id*.  On August 3, 2007, defendant answered the complaint and alleged counterclaims against NFIC for breach of its duty of good faith and breach of the insurance contract.  *See*, Answer, Affirmative Defenses, and Counterclaims, CIV-07-545-F.

Subject Insurance Policy

The liability insurance policy at issue provides in pertinent part:

A.    **COVERAGES**

1.    **Business Liability**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damages," "personal injury" or "advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance does not apply . . . .

-3-

* * * *

**b.**    This insurance applies:

    **(1)**    To "bodily injury" and "property damage" only if:

        **(a)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

        **(b)**    The "bodily injury" or "property damage" occurs during the policy period.

    **(2)**    To:

        **(a)**    "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

        **(b)**    "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services . . . .

* * * *

**F.**    **DEFINITIONS**

**1.**    **"Advertising Injury"** means injury arising out of one or more of the following offenses:

* * * *

-4-

      **b**.     Oral or written publication of material that violates a person's right of privacy.

* * * *

**3**.    **"Bodily injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * * *

**12**.   **"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**13**.   **"Personal Injury"** means injury, other than "bodily injury," arising out of one or more of the following offenses:

* * * *

      **c**.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor . . .

* * * *

      **e**.     Oral or written publication of material that violates a person's right of privacy.

* * * *

**15**.   **"Property Damage"** means:

      **a**.     Physical injury to tangible property, including all resulting loss of use of that property.  All such

> loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b**.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Exhibit 2, NFIC's motion, pp. CNA 0039, CNA 0048, CNA 0050 (emphasis in original).

The liability insurance policy also provides in pertinent part:

**B**.  **EXCLUSIONS**

> **1**.  **Applicable to Business Liability Coverage**
>
> This insurance does not apply to:
>
> **a**.  Expected or Intended Injury
>
> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured . . .
>
> \* \* \* \*
>
> **e**.  Employers' Liability
>
> "Bodily injury" to:
>
> **(1)**  An "employee" of the insured arising out of and in the course of:
>
> **(a)**  Employment by the insured; or
>
> **(b)**  Performing duties related to the conduct of the insured's business . . .
>
> This exclusion applies:

**(1)**    Whether the insured may be liable as an employer or in any other capacity; and

**(2)**    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**p**.    "Personal injury" or "advertising injury":

\* \* \* \*

**(3)**    Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured . . . .

Exhibit 2, NFIC's motion, p. CNA 0041, CNA 0043 (emphasis in original).

The policy also provides in pertinent part:

**EMPLOYMENT – RELATED PRACTICES EXCLUSION**

\* \* \* \*

The following exclusion is added to Section **B. EXCLUSIONS** . . .

This insurance does not apply to:

**r**.    "Bodily injury" or "personal injury" to:

**(1)**    A person arising out of any;

\* \* \* \*

**(b)**    Termination of that person's employment;

**(c)**    Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation,

> reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person
> . . . .

Exhibit 2, NFIC's motion, p. CNA 0023 (emphasis in original).

Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

Discussion

Under Oklahoma law, the duty to defend is separate from and broader than the duty to indemnify. First Bank of Turley v. Fidelity and Deposit Ins. Co. of Maryland, 928 P.2d 298, 302 (Okla .1996). An insurer has a duty to defend an insured whenever it discovers facts that give rise to potential liability under the

policy. *Id*. at 302.   The insurer's defense duty is determined on the basis of information gleaned from the petition (and other pleadings), from the insured and from other sources available to the insurer at the time the defense is demanded. First Bank of Turley, 928 P.2d at 303-304.  Consequently, the duty to defend is not limited to the precise language of the pleadings; rather "*[t]he insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible*." *Id*. at 303, n. 15 (emphasis in original).

An insurer "must defend an action in which damages that are *potentially* within the policy's coverage are sought, even though coverage may ultimately not be afforded." First Bank of Turley, 928 P.2d at 304,  n. 16 (emphasis in original). There need only be a possibility of recovery, not a probability of recovery. *Id*. at 303, n. 14.  However, the insurer's obligation to defend is not unlimited. *Id*. at 303. The defense duty is measured and limited by the nature and kinds of risks covered by the insurance policy as well as by the reasonable expectations of the insured. *Id*.

Whether NFIC owes a duty to defend or indemnify depends on the interpretation of the policy.  Under Oklahoma law, insurance policies are contracts. First Bank of Turley, 928 P.2d at 302, n. 6; Silver v. Slusher, 770 P.2d 878, 883 (Okla.1988).  "An insurance policy, like any other contract of adhesion, is liberally construed, consistent with the object sought to be accomplished, so as to give a reasonable effect to all of its provisions, if possible." Dodson v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla.1991).  Parties to an insurance contract are "bound by the terms of contract and courts will not undertake to rewrite terms thereof." *Id*.  "The construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purpose, and viewed in the light of common sense so as not to bring about an absurd result." *Id*.

An unambiguous insurance contract is construed according to its plain terms. Max True Plastering Company v. United States Fidelity and Guaranty Company, 912 P.2d 861, 869 (Okla. 1996).  The interpretation of the insurance contract is a matter of law for the court to determine, as is the question of whether the contract is ambiguous.  *Id*.  An insurance contract is ambiguous only if it is susceptible to two constructions.  *Id*.  If ambiguous, the contract will be interpreted, consistent with the parties' intentions, most favorably to the insured and against the insurer. Dodson, 812 P.2d at 377.

As previously stated, NFIC contends that it has no duty to defend or indemnify because the claims of the plaintiffs in the underlying action do not fall within the subject policy's definitions of "bodily injury," "property damage," "personal injury" and "advertising injury."  NFIC asserts that there is clearly no allegation of "property damage" or "bodily injury," as those terms are defined by the policy, in the underlying action.  As to "personal injury" and "advertising injury," NFIC acknowledges that both terms include "oral or written publication of material that violates a person's right to privacy."  However, it contends that the well-settled meaning of "publication" in Oklahoma is communication of information to third parties other than the participants.  NFIC maintains that there is no allegation in the underlying action of communication to third parties.  The only allegation is that Reed and other defendant employees listened in on conversations between the plaintiffs.  NFIC, however, points out that under Oklahoma law, communication with and among employees is not publication to third parties.  Because the statements never were communicated outside the company, NFIC contends that the statements were not published.  Consequently, it contends that plaintiffs' allegations do not fall within the terms of "personal injury" or "advertising injury."

-10-

NFIC additionally contends that even if there were allegations of "bodily injury" or "property damage" in the underlying action, there is no coverage for plaintiffs' claims because the policy specifically excludes coverage for "bodily injury" or "property damage" expected or intended by the insured.  NFIC asserts that according to the allegations, defendant intended to listen in on the conversations between its employees and customers.  Indeed, plaintiffs in the underlying action allege that Reed informed plaintiff Hammer that she would be listening to the conversations.  NFIC additionally points out that the policy excludes "bodily injury" to an employee that arises out of and in the course of employment with defendant.  NFIC argues that the bodily injury claims of plaintiffs Hammer and Porter are clearly excluded by the policy.  Further, NFIC argues that even if the underlying action included allegations of "personal injury" or "advertising injury," there is no coverage for these claims because the policy specifically excludes "personal injury" and "advertising injury" which arises out of "willful violation of a penal statute or ordinance committed by or with the consent of the insured."  Because the same acts which form the basis of the claim for violation of 18 U.S.C. § 2510, *et seq.*, also form the basis of the claims for invasion of privacy and intentional infliction of emotional distress, NFIC contends that coverage for all of the claims are excluded.  Finally, NFIC argues that plaintiff Porter's claim for wrongful discharge is specifically excluded by the policy which excludes "bodily injury" or "personal injury" arising out of the termination of employment.

Defendant contends that "bodily injury" is alleged in the underlying action by way of the claim for intentional infliction of emotional distress.  It also contends that "personal injury" and "advertising injury" are alleged in that "publication," which is not defined by the policy, may be reasonably interpreted to not require

communication solely to third persons.  In addition, defendant contends that the definition of "personal injury" includes "invasion of the right of private occupancy of a room."  According to defendant, the underlying claims include allegations of invasion of the right of private occupancy of a room.  Further, defendant argues that it is premature to make a determination as to whether the acts alleged were intentional or criminal and thus the cited exclusions apply.  Defendant asserts that a criminal or intentional act must be proven before a determination can be made as to coverage.  Defendant contends that the federal wiretapping statute does not apply where one of the parties have given prior consent to the interception.  Defendant contends that a factual question exists as to whether plaintiffs gave implied consent to the interception.

In reply, NFIC asserts that while "personal injury" includes "invasion of the right of private occupancy of a room," the unambiguous phrase only applies to violations of one's real property rights.  NFIC asserts that there is not an allegation in the underlying suit that plaintiffs in that action had a possessory right with respect to the room where the conversations occurred and that they were thrown out in derogation of that right.

At the outset, the court concludes that there are no allegations by the plaintiffs in the underlying action of "property damage" or "bodily injury" to which the insurance applies.  Clearly, there are no allegations that come within the definition of "property damage," i.e. physical injury to tangible property or loss of use of tangible property that is not physically injured.  Exhibit 2, NFIC's motion, CNA 0050.  Indeed, defendant does not argue that any such allegations exist. While defendant argues that there are allegations of "bodily injury," the court disagrees. The court concludes that there are no allegations in the underlying action that come within the definition of "bodily injury."  Bodily injury is defined by the

policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Exhibit 2, NFIC's motion, CNA 0048. Although Oklahoma courts have not addressed the issue, the majority of courts hold that a claim for emotional distress, absent any physical injury, does not constitute "bodily injury" in the insurance context. National Cas. Co. v. Great Southwest Fire Ins. Co., 833 P.2d 741, 746 (Colo. 1992) ("The majority of courts that have interpreted bodily injury as it is used in the Hartford policy have determined that it covers physical injury and does not include claims for purely nonphysical or emotional harm."), see also, 20 Holmes' Appleman on Insurance 2d, § 129.2, p. 30 (2002) ("The majority rule regarding the insuring language 'bodily injury' found in CGL policies is that 'bodily injury' does not include a claim for emotional distress absent a physical injury.") (emphasis in original). The court concludes that the Oklahoma courts, when faced with the issue, would follow the majority view. In the underlying action, plaintiffs have only alleged that they suffered "ridicule, extreme embarrassment and humiliation and severe mental distress." See, Complaint, CIV-07-328-F, ¶ 21, ¶ 31, and ¶ 38. With no allegations other than nonphysical or emotional harm,[2] the court concludes that the allegations in the underlying action are not sufficient to constitute "bodily injury."[3]

_____

[2] As previously stated, defendant, in its briefing, contends that "bodily injury" is alleged in the underlying action because a claim for intentional infliction of emotional distress has been alleged. The court notes, however, that under Oklahoma law, a right to recover for intentional infliction of emotional distress does not depend on physical injury. Chandler v. Denton, 741 P.2d 855, 867 (Okla. 1987). Therefore, the mere fact that an intentional infliction of emotional distress claim has been alleged does not mean that the allegations constitute "bodily injury."

[3] Even if the court were to find that "bodily injury" includes nonphysical or emotional harm, NFIC has also argued that there are no allegations in the underlying action that the "bodily injury" was caused by an "occurrence." The policy, as previously cited, provides that "this insurance applies" to "bodily injury" only if the "bodily injury" is "caused by an 'occurrence.'" Exhibit 2, NFIC's motion, CNA 0039. "Occurrence" is defined by the policy as "an accident, including
(continued...)

The court, however, finds that the allegations in the underlying action do fall within the definition of "personal injury." The personal injury provision of the insurance policy covers injuries "arising out of . . .oral . . .publication of material that violates a person's right of privacy." The term "publication" is not defined in the policy. NFIC contends that under Oklahoma law, specifically, <u>Magnolia Petroleum Co. v. Davidson</u>, 148 P.2d 468 (Okla. 1944), "publication" means the communication of information to third parties other than the corporate participants. NFIC argues that the communication must be to someone other than the agents and employees of defendant; otherwise, the corporation would only be communicating with itself. However, even if publication is construed to mean the communication of information to third parties other than the corporate participants, the evidence in the record before the court shows that the conversations were overheard by way of a baby monitor. As is discussed below, this is a significant fact, because the baby monitor was a device capable of intercepting oral communications.

In <u>Bowyer v. Hi-Lad, Inc.</u>, 609 S.E.2d 895 (W.Va. 2004), a hotel employee had sued the hotel owner, alleging that the hotel owner had subjected him to illegal oral surveillance in violation of the Wiretapping and Electronic Surveillance Act. The hotel owner had intercepted the employee's private conversations through the use of hidden microphones in the workplace. The hotel owner's insurer filed a complaint seeking a declaratory judgment that there was no coverage for the employee's lawsuit under the commercial general liability insurance policy which defined personal and advertising injury to include "oral or written publication of

---

[3](...continued)

continuous or repeated exposure to substantially the same general harmful conditions." Exhibit 2, NFIC's motion, CNA 0050. Although defendant has not presented any argument or authority to show allegations of a bodily injury caused by an "occurrence" and has confessed NFIC's argument, *see*, LCvR 7.1(g), the court need not address the argument in light of the court's finding of no allegations of "bodily injury."

material that violates a person's right to privacy." Like NFIC in this action, the insurer argued that no "publication" occurred because there were no allegations that the employee's statements were communicated to anyone other than the officers and employees of the insured. In rejecting the argument, the West Virginia Supreme Court of Appeals stated:

> [The insurance company] asserts that the meaning of "publication" is clear and requires publication to a third person, and there is no coverage afforded to the [insured] in the instant case by the policy language. We disagree.
>
> The [] policy contains no definition of the word "publication." We find nothing in the policy indicating that the word publication necessarily means transmitting the intercepted communications to a third party, as is required of material in the defamation context.

*Id*. at 912.

> Despite its finding, however, the court also went on to state:
>
> And, even were we to assume publication does require communicating to a third-party, the surveillance monitoring system apparently functioned in a way that anyone in the manager's office or in [the supervisor's] home had the ability to listen in on employee conversations. Accordingly, we find that the policy language can reasonably be interpreted such that there would be coverage for the allegations in [the employee's] complaint, for the oral publication of material that violated his right of privacy.

*Id*. at 912.

In the case at bar, the baby monitoring system would function in a way that anyone in the offices of Reed or other employees, or anyone near the baby monitor (such as defendant's customers), would have had the ability to listen in on the employee and customer conversations. Therefore, even if the term "publication" were to be construed as argued by NFIC, that is, to communicate information to

third parties other than the corporate participants, the allegations in the underlying action would arguably fall within the "personal injury" coverage of the insurance policy. As previously stated, an insurer "must defend an action in which damages that are *potentially* within the policy's coverage are sought, even though coverage may ultimately not be afforded." First Bank of Turley, 928 P.2d at 304, n. 16 (emphasis in original).

In sum, the court concludes that the allegations in the underlying action do fall within the definition of "personal injury."[4] The court must therefore address NFIC's arguments that the insurance policy specifically excludes coverage for the allegations in the underlying action.

NFIC argues that "personal injury" coverage is excluded because the alleged "personal injury" arose out of "the willful violation of a penal statute or ordinance committed by or with the consent of the insured." NFIC's motion, Exhibit 2, CNA 0043. The underlying complaint alleges violation of the federal wiretap act, 18 U.S.C. § 2510, *et seq*., by intercepting oral communications without plaintiffs' consent.[5] The courts addressing claims based upon this act and similar state wiretap statutes, have concluded that such claims fall within the policy exclusion now before the court. *See*, Western Casualty & Surety Co. v. City of Palmyra, 650 F.

---

[4] While the court concludes that the claims in the underlying action fall within the definition of "personal injury" because they allege injury arising out of "oral . . . publication of material that violates a person's right of privacy, the court rejects defendant's alternative argument that the claims fall within the "personal injury" definition because they allege injury arising out of the "invasion of the right of private occupancy of a room." The Tenth Circuit has interpreted the phrase "invasion of the right of private occupancy" as requiring an invasion of a real property right. Liberty Mut. Ins. Co. v. East Cent. Oklahoma Elec. Co-op., 97 F.3d 383, 390 (10th Cir. 1996) (applying Oklahoma law). The court concludes that the claims in the underlying action do not allege injury arising out of an invasion of a real property right to a room.

[5] The jurisdictional reach of this federal legislation is truly remarkable. *See, e.g.* United States v. Anaya, 779 F.2d 532 (9th Cir. 1985).

Supp. 981 (E.D. Md. 1987); Acceptance Ins. Co. v. Bates, Dunning & Assoc., 858 So.2d 1068 (Fla.App. 3 Dist. 2003); MGM, Inc. v. Liberty Mut. Ins. Co., 855 P.2d 77 (Kan. 1993); Reliance Ins. Co. v. Lazzara Oil Co., 601 So.2d 1241 (Fla. App. 2 Dist. 1992).   The court agrees.

Defendant contends that the policy exclusion should not apply because a genuine issue of material fact exists as to whether the plaintiffs in the underlying action gave implied consent.  Defendant also contends that in order to succeed on their claim, plaintiffs must demonstrate that they had an expectation of that their oral communications would not be intercepted.   The underlying complaint, however, specifically alleges that NWM neither requested nor received plaintiffs' permission to listen in on the private conversations.  It also alleges that plaintiff Hammers specifically informed Reed that she did not have permission to listen in on the conversations.  It also alleges that plaintiffs had a reasonable expectation of privacy when engaging in the private and confidential interviews.  Although defendant asserts that a genuine issue of material fact exists, defendant has not pointed to any evidence in the record indicating that implied consent may have existed or that plaintiffs did not have an expectation that their oral communications would not intercepted.

Defendant further argues that the claim under the federal wiretap act is but one claim and that the underlying complaint contains other claims such as invasion of privacy and intentional infliction of emotional distress.  However, the court concludes that these claims also fall within the "willful violation of penal statute" policy exclusion because the same allegations and facts which support the statutory claim also support the invasion of privacy and intentional infliction of emotional distress claim.  The injuries asserted arise out of the unlawful interception of oral communications. *See*, Western Cas. and Sur. Co., 650 F. Supp. at 984; Acceptance

<u>Ins. Co.</u>, 858 So.2d at 1070.[6]  Otherwise stated, if, as a *factual* matter, the claims for injury asserted in the civil suit as to which insurance coverage is sought arise from acts that amount to a "willful violation of penal statute," the exclusion is triggered and that is the end of the matter, even if the elements of some of the *legal* theories upon which relief is sought in the civil suit differ from the elements which must be shown to establish a violation of the penal statute.

        Finally, in the underlying action, plaintiff Porter also alleges a claim that she was wrongfully terminated from her employment with defendant.  Specifically, plaintiff Porter alleges that she was terminated by defendant in retaliation for her refusal to lie as to certain facts and circumstances relating to defendant listening in on plaintiffs' private conversations.  Complaint, CIV-07-328-F, ¶¶ 36-37.  NFIC contends that the Employment - Related Practices Exclusion Endorsement, NFIC's motion, Exhibit 2, CNA 0023, precludes any coverage for this claim.  Defendant, in its response, does not address the applicability of the exclusion to plaintiff Porter's claim.  The court, in its discretion, deems the matter confessed.  LCvR 7.1(g).  The court concludes that the exclusion does preclude coverage for the claim.  The cited exclusion specifically provides that the insurance does not apply to "personal injury" to a person arising out of "[t]ermination of that person's employment."  NFIC's motion, Exhibit 2, CNA 0023.  The basis of plaintiff Porter's claim is the termination of her employment.  The court therefore concludes that the insurance policy excludes coverage for the wrongful discharge claim of plaintiff Porter in the underlying action.

---

        [6] As previously discussed, defendant maintains the plaintiffs' claims in the underlying action fall within "advertising injury" coverage.  Even if the court were to find that the claims fall with this coverage, the court concludes that such coverage, like the "personal injury" coverage is excluded because the policy excludes "advertising injury" which arises out of "the willful violation of a penal statute . . . committed by or with the consent of the insured."  *See*, Exhibit 2, NFIC's motion, p. CNA 0043.

As the court has found that the insurance policy excludes coverage for all claims in the underlying action, the court finds that NFIC does not have a duty to defend or duty to indemnify defendant in regard to the claims in the underlying action.  The court therefore concludes that NFIC is entitled to summary judgment as to its declaratory judgment claim against defendant.  Although NFIC, in its motion, has not sought summary judgment as to defendant's counterclaims for breach of duty of good faith and breach of the insurance contract, the court, in light of its findings in this order, concludes that NFIC is entitled to summary judgment on those counterclaims.  The court therefore grants summary judgment to NFIC on those claims *sua sponte*.

Conclusion

Accordingly, Plaintiff National Fire Insurance Company of Hartford's Motion for Summary Judgment, filed September 5, 2007 (doc. no. 25), is **GRANTED**.  Summary judgment is granted in favor of NFIC on its declaratory judgment claim against defendant and on defendant's counterclaims for breach of duty of good faith and breach of insurance contract against NFIC.

Dated this 12th day of March, 2008.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

07-0545p008(pub).wpd